E-FILED
Friday, 05 October, 2007  04:06:45 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. CR 07-20041 |
| RICKY R. SPENCER, | ) ) ) | |
| Defendant. | ) | |

### THE UNITED STATES OF AMERICA'S RESPONSE TO DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA

NOW COMES the United States of America, by Rodger A. Heaton, United States Attorney for the Central District of Illinois, and Eugene L. Miller, Assistant United States Attorney, and in response to the Defendant's Motion to Withdraw Guilty Plea, states as follows:

**Relevant Facts**

1.    On July 10, 2006, the Circuit Court of Vermilion County, Illinois convicted the defendant, Ricky R. Spencer, of possession of a controlled substance in Case Number 06-CF-92 and later sentenced him to 30 months in the Illinois Department of Corrections. (PSR ¶44) On November 17, 2006, the Department of Corrections Prisoner Review Board released the defendant from imprisonment on conditions of mandatory supervised release (*i.e.*, parole). (PSR ¶44)

2.    Prior to his release, the defendant executed an agreement that set forth the terms under which the defendant would be conditionally released from confinement.

(*See* Parole or Mandatory Supervised Release Agreement, executed by the defendant on 11/17/2006, attached hereto as Exhibit A) The agreement informed the defendant that, as a condition of his release, "you shall consent to a search of your person, property, or residence under your control." (Exhibit A, ¶10) The defendant signed the agreement, acknowledging that he had carefully read or had read to him the conditions of his release, that he understood those conditions, and that he agreed to comply with them. (Exhibit A)[1]

3.   In March of 2007, investigators with the Danville Police Department received information suggesting that someone had placed a contract on the life of two officers of the Danville Police Department.  During their investigation, the investigators began to suspect that the defendant (also known as "Slick") might be involved in the murder for hire scheme.[2]  The investigators further knew from consulting with agents of the Vermilion County Metropolitan Enforcement Group (VMEG), a multi-jurisdictional drug task force located in Vermilion County, Illinois, that VMEG agents had received information that the defendant was actively involved in distributing cocaine in Danville, Illinois, was associated with members of the Black P Stones violent criminal

---

[1] Thus, the defendant's allegation that "the terms of his parole did not explicitly allow for the . . . warrantless search of his home" is patently false.

[2] The defendant complains that this information was "swept off the record" until his motion brought it to light.  In fact, the defendant is only aware of this information because the United States provided it to him in discovery prior to his plea of guilty.  Frankly, it was to the defendant's advantage not to have this information also brought to the Court's attention.  The United States has no objection, however, to the Court considering this additional information at the defendant's sentencing hearing.

street gang, and the defendant had a prior weapons conviction.

4.      The investigators relayed their concerns to Illinois Department of Corrections Senior Parole Agent Kelly Harvey, who had previously supervised the defendant while on parole and was aware the defendant had previously been involved in gang activity and drug trafficking.  Agent Harvey knew that the defendant was still on parole and decided to conduct a search of the residence which the defendant had provided to the Department of Corrections as his residence.

5.      On March 20, 2007, Agent Harvey paid a home visit to the defendant at the defendant's parole residence at 1004 Skyline, Danville, Vermilion County, in the Central District of Illinois.  VMEG agents accompanied Agent Harvey.  During the visit, Agent Harvey found in the defendant's residence approximately one kilogram of a white, powdery substance that tested positive for the presence of cocaine, 112.8 grams of a green leafy substance that tested positive for the presence of marijuana, and 145 tablets that appeared to be and tested positive for the presence of methylenedioxy-methamphetamine  (MDMA or "Ecstacy").  The seized white powdery substance was later determined to be 994.8 grams of cocaine hydrochloride with a purity of 83.9% by the DEA North Central Laboratory.

6.      Immediately next to the cocaine hydrochloride, Agent Harvey found a MAC 11, nine millimeter, firearm with a fully loaded nine millimeter magazine and a loaded Harrington & Richardson .32 caliber revolver.  Elsewhere in the defendant's residence, Agent Harvey found approximately 3.2 grams of an off-white, chunky

substance that tested positive for the presence of cocaine and appeared to be cocaine base ("crack"), and a .50 caliber black powder muzzle loading rifle.  Following the search, VMEG agents arrested the defendant.

**Procedural History**

7.    On April 4, 2007, a federal grand jury indicted the defendant on three counts related to the March 20, 2007 search:  Count 1 charged possession of 500 grams or more of cocaine with the intent to distribute it; Count 2 charged possession of a firearm in furtherance of a drug trafficking crime; and Count 3 charged possession of a firearm by a felon.  A fourth count alleged that the defendant was involved in a conspiracy to distribute cocaine from October 2003 through at least July 12, 2004.

8.    On May 31, 2007, the defendant pleaded guilty to Counts 1 and 2 pursuant to a written plea agreement, and the United States agreed to dismiss Counts 3 and 4 at the time of sentencing.  Following his change of plea, the matter was scheduled for sentencing on September 5, 2007.  On August 21, 2007, though represented by counsel, the defendant filed a *pro se* motion to withdraw his guilty plea based on a claim that the search of his residence and seizure of the illegal drugs and firearms violated his constitutional rights, and that his counsel provided ineffective representation in failing to attempt to suppress the evidence against him.  On September 5, 2007, the defendant filed an additional *pro se* pleading in support of his motion to withdraw his plea.  The Court directed the United States to respond to the defendant's motion to withdraw guilty plea by October 5, 2007.

**Argument**

9. A defendant does not have an absolute right to withdraw his guilty plea. *Untied States v. Schilling*, 142 F.3d 388, 398 (7th Cir. 1998). Pursuant to Rule 11(d)(2) of the Federal Rules of Criminal Procedure, however, a court may permit a defendant to withdraw his guilty plea before sentence is imposed if the defendant can show a fair and just reason for requesting the withdrawal. The fair and just reason advanced by the defendant in the instant case is premised on a claim that the search that found the drugs and guns violated his constitutional rights. The defendant's claim is completely without merit.

10. It is settled law in this Circuit that a blanket waiver of Fourth Amendment rights as a condition of probation or parole, such as the one executed by the defendant in this case, is enforceable and alone justifies a warrantless search of a defendant's residence. *United States v. Hagenow*, 423 F.3d 638, 643 (7th Cir. 2005); *United States v. Barnett*, 415 F.3d 690, 691-92 (7th Cir. 2005); *see also Carroll v. Barnack*, 2006 WL 328173, at *2 (7th Cir. Feb. 14, 2006) (unpublished order[3]) (Seventh Circuit has "held that a blanket waiver of Fourth Amendment rights as a condition of probation justifies searching a probationer's home even without any individualized suspicion").

11. Although *Barnett* involved a probationer as opposed to a parolee, its reasoning is on point and applies to the instant case. *Barnett* noted that, in *United States*

---

[3] This order has no precedential value, but establishes that the Seventh Circuit continues to follow *Barnett* and *Hagenow*.

5

*v. Knights,* 534 U.S. 112 (2001), the Supreme Court had already held that where there was a blanket consent to search a probation officer *at most* needed only reasonable suspicion. 415 F.3d at 691. *Barnett* further noted that the Supreme Court had left open the question whether a blanket waiver of Fourth Amendment rights as a condition of probation could alone justify the search. *Id.* The Seventh Circuit found that "nothing is more common" than an individual consenting to a search that would otherwise violate the Fourth Amendment because he would be better off, such as consenting to a search of his residence in exchange for release rather than staying in prison. *Id.* at 691-92. Therefore, *Barnett* held that the blanket permission to search was enforceable and that the probation officer did not have to justify the search by establishing reasonable suspicion. *Id.* at 692. *Hagenow* later adopted *Barnett's* reasoning and upheld a warrantless suspicionless search based on a similar condition of probation permitting blanket searches. *Hagenow*, 423 F.3d at 643.

12. In the case at bar, the defendant was released from prison – a greater invasion of personal privacy than being exposed to searches of one's home on demand – only on the condition that he consent to a search of his residence while on parole. The defendant chose to sign the consent rather than remain incarcerated. Under *Barnett* and *Hagenow*, Agent Kelly needed no individualized suspicion to search the defendant's residence based on the defendant's prior enforceable consent.

13. The defendant cites *Griffin v. Wisconsin*, 483 U.S. 868 (1987) in support of his claim that the search was improper. *Hagenow* rejected similar reliance on *Griffin*:

> Relying on *Griffin*, Hagenow argues that a probation officer cannot conduct a warrantless search of a probationer's property absent a valid regulatory scheme, and that no "special need" exists here. This argument is unsound. The *Knights* Court explicitly rejected as "dubious logic" the argument that a warrantless search of a probationer's home satisfies the Fourth Amendment only if it is a "special needs" search, stating that it runs contrary to *Griffin's* express statement that its "special needs" holding made it "unnecessary to consider whether" warrantless searches of probationers were otherwise reasonable under the Fourth Amendment. Because Hagenow signed a waiver agreeing to submit to searches while on probation, this case falls under *Knights* and its progeny, not *Griffin*, and the "special needs" test does not apply.

423 F.3d at 643 (citations omitted).

14.     Furthermore, the defendant questions Agent Kelly's motives and claims that he was just a "stalking horse" for the police, citing *United States v. Coleman*, 22 F.3d 126 (7th Cir. 1994) and *United States v. Harper*, 928 F.2d 894 (9th Cir. 1991). The defendant's allegations are legally irrelevant, and the cases he relies on no longer good law. The United States Supreme Court eliminated the "stalking horse" defense in *Knights* when it held in a probation search case that it was "unwilling to entertain Fourth Amendment challenges based on actual motivations of individual officers." 534 U.S. at 122 (citing *Whren v. United States*, 517 U.S. 506, 513 (1996)). In fact, other courts, including the Ninth Circuit, whose opinion was unanimously reversed in *Knights*, have acknowledged that *Knights* eliminated the stalking horse defense set forth in *Coleman, Harper,* and other cases. *See, e.g., United States v. Stokes*, 292 F.3d 964, 967 (9th Cir. 2002) ("our circuit's line of cases holding searches of probationers invalid on the ground that

they were subterfuges for criminal investigations is, in that respect, no longer good law"); *Riley v. Commonwealth*, 120 S.W.3d 622, 628 (Ky. 2003) ("We agree that *Knights* eliminated the so-called "stalking horse" defense set forth in *Coleman* and other cases).

15. Furthermore, not only may a parole officer conduct a search to assist law enforcement officers, the search may be conducted by the law enforcement officers themselves. In *Hagenow*, the search was conducted by police officers accompanied by a probation officer. 423 F.3d at 641. The Seventh Circuit still upheld the warrantless search based on the defendant's prior waiver of his Fourth Amendment rights. *Id.* at 643.

16. Finally, although unnecessary, Agent Kelly did have reasonable suspicion to conduct the search in this case, based on the information he had received from the Danville Police Department and VMEG that the defendant might be involved in a contract killing and engaged in ongoing drug trafficking and gang activity.

        Respectfully submitted,

        RODGER A. HEATON
        UNITED STATES ATTORNEY

        s/ Eugene L. Miller
        Eugene L. Miller, Bar No. IL 6209521
        Assistant United States Attorney
        United States Attorney
        201 S. Vine St., Suite 226
        Urbana, IL 61802
        217/373-5875
        FAX: 217-373-5891
        eugene.miller@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on the 5th day of October 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Diana S. Lenik
Attorney at Law
202 W. Green Street
Urbana, IL 61801

                                            s/ Eugene L. Miller
                                            Eugene L. Miller, Bar No. IL 6209521
                                            Assistant United States Attorney
                                            United States Attorney
                                            201 S. Vine St., Suite 226
                                            Urbana, IL 61802
                                            217/373-5875
                                            FAX: 217-373-5891
                                            eugene.miller@usdoj.gov